**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

_____
                                  )
UNITED STATES OF AMERICA          )
                                  )
v.                                )        Criminal Action
                                  )        No. 21-cr-10298-PBS
JUAN CARLOS ESPINAL,              )
                                  )
                Defendant.        )
_____ )

<u>**MEMORANDUM AND ORDER**</u>

August 3, 2026

Saris, J.

<u>**INTRODUCTION**</u>

Defendant Juan Carlos Espinal has moved for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Espinal pled guilty to one count of conspiracy to distribute and possess with intent to distribute cocaine and was sentenced to 70 months of imprisonment in June 2024. Espinal argues that compassionate release is warranted because of his wife's inability to care for their adult sons who have cerebral palsy. The government counters that Espinal has failed to demonstrate an extraordinary and compelling reason justifying relief. After a hearing, the Court **<u>ALLOWS</u>** Espinal's motion (Dkts. 600, 616).

<u>**BACKGROUND**</u>

In January 2024, Espinal pled guilty to one count of conspiracy to distribute and possess with intent to distribute

1

cocaine. Espinal transported cocaine in his vehicle from New York to Boston. The Court held that Espinal was responsible for between five and fifteen kilograms of cocaine.

The Court sentenced Espinal in June 2024. Espinal's guideline range was 57 to 71 months. While on pretrial release, Espinal worked and cared for his family without issue. The Court imposed a guideline sentence of 70 months and three years of supervised release. Espinal is scheduled to be released from prison on October 13, 2028.

Espinal and his wife, Jenyss Aleman, share three children, including twin twenty-year-old sons, Gabriel and Rafael. The twins' biological father died when they were infants, and Espinal has played a parental role in their lives since they were seven years old. Gabriel and Rafael were disabled with cerebral palsy at birth and possess the approximate cognitive function of eight-year-olds. Following failed surgeries in 2019, both boys became fully dependent on wheelchairs and require assistance with bathing, dressing, and personal care. As a direct result of that surgery, Gabriel is paralyzed from the neck down, is bed-ridden, and requires a catheter and assistance with bowel movements. Prior to his incarceration, Espinal and Aleman shared significant caregiving responsibilities, supplemented by insurance-provided in-home health assistance and some support from Aleman's and Espinal's mothers.

2

After Espinal's incarceration, Aleman became the twins' sole caregiver, responsible for lifting the boys from their beds into their wheelchairs, transporting them to frequent medical appointments, and providing them with daily care. Because of this, Aleman reports that she now suffers from chronic back pain and extreme fatigue and that her mental and physical health has severely deteriorated. She now often misses her children's appointments and has discontinued Rafael's therapy despite his worsening mental health. Aleman has also missed appointments for the couple's six-year-old daughter with asthma, whose resulting attacks have sometimes caused her to miss school.

Aleman no longer receives the same level of in-home care services previously funded by insurance. According to counsel, whereas the family used to receive approximately twenty-four hours of weekly assistance for Gabriel and eight hours for Rafael, the family now only receives eight weekly hours for Gabriel, which are reserved for certified medical procedures. The increased caretaking demands have also prevented Aleman, who used to be a cleaner, from working to support her family. Aleman's mother passed away recently, and Espinal's mother is hospitalized with severe illness. Aleman does not have close friends or family in the area available to assist her, nor can she afford to supplement private in-home care out-of-pocket.

Espinal was placed in the Special Housing Unit ("SHU") at FCI Yazoo City in November 2025 because he was found with an unauthorized cell phone that he used to call his son. Espinal was also disciplined in July 2026 alongside twelve other inmates in connection with a cell phone found in an inmate bathroom. Otherwise, he has completed several rehabilitation programs and earned a positive recommendation from his off-site food service supervisor. The government does not argue that Espinal is violent.

## LEGAL STANDARD

A defendant who has exhausted his administrative remedies may move the sentencing court for compassionate release under 18 U.S.C. § 3582(c)(1)(A).[1] See United States v. Ayala-Vázquez, 96 F.4th 1, 12 (1st Cir. 2024). A court faced with such a motion must "engage[] in a multi-step inquiry." United States v. Burgos-Montes, 142 F.4th 48, 57 (1st Cir. 2025). The court first "determines if the defendant is eligible for compassionate release by assessing (1) if the defendant has presented extraordinary and compelling reasons warranting such a sentence reduction, and (2) whether the sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission." Id. (cleaned up). The applicable policy statement lists categories of circumstances that can qualify as extraordinary and compelling reasons to reduce a

---

[1] The government does not dispute that Espinal has properly exhausted his administrative remedies.

4

sentence, see U.S.S.G. § 1B1.13(b), and the Supreme Court has held that a "reason is 'extraordinary' and 'compelling' only if it is sufficiently unusual and convincing to 'warrant' compassionate release," Rutherford v. United States, 146 S. Ct. 1320, 1332 (2026) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). The defendant must also not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(a)(2). If the defendant satisfies these first two criteria, the court "then considers the relevant [18 U.S.C.] § 3553(a) sentencing factors and determines whether, in its discretion, the sentence reduction is warranted in whole or in part under the particular circumstances of the case." Burgos-Montes, 142 F.4th at 57 (cleaned up). "A district court may grant a compassionate release motion only if it finds that the movant satisfies each step." United States v. D'Angelo, 110 F.4th 42, 48 (1st Cir. 2024).

## DISCUSSION

### I.    Extraordinary and Compelling Reason

Espinal argues that Aleman's inability to care for their children constitutes an extraordinary and compelling reason for compassionate release under § 1B1.13(b)(3). As relevant here, that provision covers the "incapacitation of the caregiver of the defendant's" adult child who is "incapable of self-care because of a mental or physical disability." U.S.S.G. § 1B1.13(b)(3)(A). The government responds that Aleman is not incapacitated within the

meaning of § 1B1.13(b)(3) and that Espinal has not demonstrated why other family members cannot provide Aleman assistance.

While Aleman may still be capable of providing some care, Espinal has demonstrated here that the children's needs have significantly surpassed her capacity as a single caregiver. The children's grandparents are no longer able to assist with the twins' physically demanding care, Aleman's siblings do not live nearby, and the reduction in in-home health hours coupled with Aleman's physical and mental deterioration represent a significant change in circumstances since sentencing.[2] When considering circumstances like Espinal's, another court has found "incapacitation" under § 1B1.13(b)(3)(A).[3]

---

[2] Contrary to the government's argument, the policy statement expressly provides that "the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction." U.S.S.G. § 1B1.13(e); cf. United States v. Bryant, 144 F.4th 1119, 1129 (9th Cir. 2025) (explaining that compassionate release could be warranted where the district court is "aware of a defendant's medical impairments at sentencing" and "the defendant's condition later deteriorates so much that he begins experiencing extraordinary and compelling medical circumstances").

[3] See United States v. Gomez, No. 19-cr-30022 (D. Mass. Oct. 16, 2023), Dkt. 120 (finding incapacitation where the primary caregiver could no longer safely meet the disabled child's extensive needs alone, diminished family resources and available government services were insufficient to provide adequate care, and the defendant was the only caretaker capable of sharing those responsibilities); cf. United States v. Bowers, No. 16-cr-00151, 2023 WL 5017015, at *10 (D. Me. Aug. 7, 2023) (finding primary caregiver's inability to manage child's suicidal ideation or provide health insurance "comes very close to the incapacitation of a caregiver").

The Court concludes that Espinal has demonstrated circumstances that amount to the incapacitation of a primary caregiver within the meaning of § 1B1.13(b)(3)(A) and that are "sufficiently unusual and convincing to 'warrant' compassionate relief." Rutherford, 146 S. Ct. at 1332 (quoting 18 U.S.C. § 3582(c)(1)(A)(i)).

**II.  Risk of Danger to Community and § 3553(a) Sentencing Factors**

Although the government does not argue that Espinal poses a danger to the community, see U.S.S.G. § 1B1.13(a)(2), the Court independently finds that this requirement for compassionate release is satisfied. Furthermore, the reduction in Espinal's sentence is consistent with the § 3553(a) sentencing factors. See 18 U.S.C. § 3582(c)(1)(A). It is undisputed that Espinal's offense was very serious: he conspired to move large amounts of cocaine into Boston and played a meaningful role in fueling the drug epidemic in Massachusetts. At the same time, Espinal had no prior criminal history, engaged in no violent behavior, and has been a responsible parent to three children, providing essential care to sons with severe disabilities. While incarcerated, Espinal has successfully completed several rehabilitation programs and performed exceptionally well at his job. See U.S.S.G. § 1B1.13(d) ("[R]ehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in

determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted.").

Espinal is scheduled for release in October 2028, meaning that he seeks early release with approximately 26 months remaining of his 70-month sentence. The Court is satisfied that the period Espinal has already served, as well as the one-year home confinement requirement the Court imposes, reflects the seriousness of his crime and adequately protects the public from future crimes. See 18 U.S.C. § 3553(a)(2)(A)-(C). The non-violent character of Espinal's offense, history, and conduct before and after sentencing indicates that he does not pose a threat to the safety of any person or the community.[4] Balancing the nature of Espinal's offense, the needs of his wife and children, and the portion of his sentence remaining, reducing Espinal's sentence is consistent with the § 3553(a) sentencing factors.

### ORDER

Accordingly, Espinal's motion for compassionate release (Dkts. 600, 616) is **ALLOWED**. Espinal's sentence on Count One charging a violation of 21 U.S.C. §§ 846 and 841(b)(1)(C) is **REDUCED** to time served followed by three years of supervised release, subject to the conditions originally imposed at

---

[4] Espinal alleges that the prison guards at FCI Yazoo City assaulted him, but neither the government nor Espinal's counsel were able to obtain information about the incident.

sentencing. Espinal's first year of supervised release is subject to the condition of home confinement with an electronic bracelet.

SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
United States District Judge